**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 25, 2010
Decided March 3, 2010

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-3717

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| v. | |
| | No. 1:01-cr-01098-1 |
| CLACY WATSON HERRERA, | |
| *Defendant-Appellee*. | James F. Holderman, *Chief Judge*. |

**O R D E R**

One week before Clacy Watson Herrera's trial was scheduled to begin, the government announced that it intended to introduce fingerprint evidence. The district court, finding the disclosure to be a violation of its discovery deadline, entered an order excluding the evidence. The government brings this interlocutory appeal, under 18 U.S.C. § 3731, challenging the decision to exclude its fingerprint evidence.

Herrera was charged in 2001 as the lead defendant in a 44-count indictment that alleges a three-year international drug trafficking conspiracy involving over 40 individuals. From 1996 to 1999, the conspirators, allegedly, imported large amounts of cocaine and

heroin into the United States from Jamaica and Panama. Herrera, operating in Panama, was alleged to be the conspiracy's primary supplier. The conspirators recruited female couriers in the United States, primarily in Chicago, to travel to Panama to receive drugs from Herrera. Various methods were used to smuggle the drugs into the United States. On some occasions, the organizers put the drugs in plastic wrap packaging, which the couriers swallowed or inserted into their body cavities. The most popular method, however, involved hiding the drugs inside baby formula cans. To avoid questions at airport security, the conspirators paid parents in the United States to loan their infants to the smugglers. The couriers traveled with the rented infants and baby formula cans to Panama where the cans were filled with liquid cocaine for the return trip.

Not only is this case complex given the size of the operation, but it is also unusual. The indictment named 26 defendants, 22 of whom were convicted in 2002 and one was convicted in 2004. Meanwhile, Herrera remained a fugitive from 2001 until June 2009 when he was extradited from Panama, where he had been in custody on an unrelated narcotics conviction.[1] Herrera was arraigned in federal court in Chicago on June 25, 2009. At a status hearing a few weeks later, on July 16, a November 9, 2009, trial date was set.

Due to the passage of time between the indictment and trial, witnesses have been hard to come by, let alone ones who remember events that occurred over a decade ago. Accordingly, on August 14, 2009, the district court certified this matter as a complex case under the Speedy Trial Act and entered an order requiring disclosure of expert testimony by September 21.

In early September, federal agents began gathering evidence from the old investigation (such as drugs and drug packaging) that they believed was connected to Herrera. The government advised him that it was submitting the evidence for fingerprint analysis. Then on September 21, the government notified Herrera that it might call a fingerprint expert, but, at that time, it had not received any results from the fingerprint testing. On November 2, a week before trial, the government was informed that two fingerprints matching Herrera's had been found on drug packaging. The government disclosed the results to Herrera along with a preliminary expert report. On November 3, Herrera asked the district court to exclude the fingerprint evidence due to the government's tardiness. The court granted the motion.

---

[1] Apparently Herrera either escaped or was released from custody in Panama sometime in 2007. Subsequently, the government says, he was located in Colombia and returned to Panama.

As an initial matter, the government argues that it did not violate the district court's discovery order because the September 21 deadline did not apply to fingerprint testing. We review a district court's discovery rulings for an abuse of discretion. *United States v. Stevens*, 380 F.3d 1021, 1025 (7th Cir. 2004). The government notes that, at a hearing on September 29, Herrera acknowledged the government's ongoing fingerprint testing and said he may need to obtain his own expert opinion. Therefore, the government argues there was no understanding that the September 21 deadline applied to fingerprint evidence. However, the government fails to cite any case law to support its claim. The district court is entitled to great deference in construing its discovery order, and thus it was not an abuse of discretion to find the government in violation of it.

The district court went too far, however, in its choice of remedy. The punishment simply does not fit the crime. We review a district court's ruling on the admission or exclusion of evidence for an abuse of discretion. *United States v. Jumper*, 497 F.3d 699, 703 (7th Cir. 2007). When considering a motion to exclude evidence, a district court should take into account whether the government acted in bad faith and whether any unfair prejudice to the defendant can be cured by a less severe alternative. *See United States v. De La Rosa*, 196 F.3d 712, 717 (7th Cir. 1999). There is no showing here of either bad faith or reckless foot-dragging by the government. Because the evidence is scientific, it has immense probative value. This is a complex case where a great deal of time has passed, so witnesses' memories may be poor, making the scientific evidence all the more crucial. Exclusion of the government's fingerprint evidence was too drastic a remedy. A more appropriate remedy might have been moving the trial ahead a few weeks to give the defense a greater opportunity to study and confront the evidence. Of course, that would have worked an imposition on the court's calendar, but such is life. We think the district court's order was an abuse of discretion.

We **REVERSE** and **REMAND** for further proceedings.