IN THE

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————

No. 10–2766

IN RE: UNITED STATES OF AMERICA,

*Petitioner.*

———————————

Petition for a Writ of Mandamus to the United States District
Court for the Northern District of Illinois, Eastern Division, and
Petition for Rehearing as Amended.
No. 01 CR 1098–1—**James F. Holderman**, *Chief Judge*.

———————————

SUBMITTED JULY 26, 2010—DECIDED JULY 27, 2010
OPINION JULY 30, 2010[*]

———————————

Before POSNER, ROVNER, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. On July 27, in response to the gov-
ernment's renewed petition for a writ of mandamus, we issued
an order granting the petition and directing the district court to
admit into evidence in *United States v. Herrera*, the criminal trial
of Clacy Watson Herrera on drug charges, an exhibit labeled
"Roberson Seizure 2"; to allow the government to recall
Stephen Koop to testify at trial about the recovery of latent fin-
gerprints from that exhibit; and to allow testimony regarding
comparison of the latent prints with known fingerprints of the

———————————

[*] This opinion is being issued in typescript; printed version to follow.

defendant. The judge had excluded the exhibit and related tes-
timony because he suspected the government, on the most
tenuous of grounds, of having tampered with the evidence, and
he threatened to grant a mistrial that would bar any further
prosecution of the defendant by virtue of the constitutional
prohibition against placing a person in double jeopardy.

Our order further stated: "The case shall be reassigned to a
district judge who is immediately available to preside, and the
trial shall resume as soon as possible." (The trial had begun on
July 6 and had been interrupted for several days because of the
judge's rulings that gave rise to two petitions for mandamus
filed by the government.) We were troubled to learn that a re-
placement judge was not designated until the afternoon of July
29, owing to an unaccountable delay in appointing an acting
chief judge to substitute for Chief Judge Holderman (the district
judge presiding in this case whom we ordered recused) in ar-
ranging for the reassignment.

In a supplemental order issued on the 28th, we noted that
Fed. R. Crim. P. 25(a) provides that in a case in which "death,
sickness, or other disability" prevents the trial judge from con-
tinuing to preside at a trial, the judge who replaces him must
certify his familiarity with the trial record before proceeding.
"The term 'other disability' in Rule 25(a) includes disability by
reason of recusal." *United States v. Sartori*, 730 F.2d 973, 976 (4th
Cir. 1984). And so our supplemental order directed the new
judge, before proceeding with the trial, to certify his or her fa-
miliarity with the record.

We said in our order of the 27th that we would issue an
opinion explaining it. This is that opinion; in it we also deny the
defendant's petition to rehear our order.

The petition for mandamus had been filed just one day be-
fore we issued our order (which is why we were unable, for
lack of time, to issue a statement of reasons). We ruled in un-
avoidable haste because in apparent response to the govern-

ment's petition the defendant had moved the district judge to
declare a mistrial—and the judge had already stated in open
court that if he granted a mistrial it would have double-
jeopardy effect on the entire case even though, he said, the ex-
hibit "relates to one count, Count No. 35, the very last count….
What will remain are 14 counts…of which multiple witnesses
have testified about the defendant's involvement. And if we
grant a mistrial, if a mistrial is granted, every one of those
counts potentially could be dismissed from the standpoint that
double jeopardy will attach to each and every one of those addi-
tional counts." And he invited the jurors to provoke a mistrial
by telling them: "I certainly would understand if you are not
available, you have served your term, and more than your term,
as jurors"—a remark that precipitated notes from several jurors
expressing concern about continuing to serve.

The judge had accused the government of lying and other
misconduct and of not wanting the jury to decide the case. The
second accusation is difficult to understand. Double jeopardy
would bar a retrial if the government had procured the mistrial
because of its dissatisfaction with the jury, even if the motion
for a mistrial was made by the defendant, as it was. *Oregon v.
Kennedy*, 456 U.S. 667, 673–76 (1982) (goading the defendant into
moving for a mistrial); *United States v. Dinitz*, 424 U.S. 600, 611
(1976) (same); *United States v. Warren*, 593 F.3d 540, 545 (7th Cir.
2010) (same). Yet he told the prosecutors: "I find the govern-
ment's conduct in seeking to preclude this jury from making a
determination with regard to the other counts, if I determine
that Government Exhibit Roberson Seizure 2 is not admissible, I
find that to be an intentional, purposeful statement that you
don't want a determination by the jury in this case…. [W]hat
the government wants is to have this jury not decide this case."

To prevent double jeopardy because of a trial judge's ruling
that is so patently unsound as to exceed the legitimate bounds
of judicial power is a legitimate role for mandamus when other

mechanisms of review are unavailable, *United States v. Vinyard*, 539 F.3d 589 (7th Cir. 2008); *United States v. Amante*, 418 F.3d 220, 222 (2d Cir. 2005); *United States v. Wexler*, 31 F.3d 117, 128 (3d Cir. 1994); *United States v. United States District Court*, 858 F.2d 534, 537 (9th Cir. 1988); see generally *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995). We regret to say that the judge's ruling in this case can only be characterized thus. We note that this judge was mandamused in *In re United States*, 398 F.3d 615 (7th Cir. 2005) (per curiam), when he became wrathful toward federal prosecutors in another criminal case.

The defendant responded to our order of the 27th seemingly within minutes by filing a petition for rehearing (we accepted his amended petition for filing the next day). In it he argued that our ordering mandamus was improper because we had given neither him nor the judge a chance to respond to the petition, as required (he claims) by Fed. R. App. P. 21(b). Confusingly, this subsection of the rule refers to a response by the "respondent," and the respondent in a petition to mandamus is the judge. But Rule 21(a)(1) and the Committee Notes to the 1996 Amendments to Rule 21 make clear that "respondent" in (b)(1) refers just to parties, not to the judge. Indeed the judge may not respond to the petition unless invited or ordered to by the court of appeals, Fed. R. App. P. 21(b)(4), and not wanting to delay the resumption of the trial we had not ordered or invited him to reply.

And because there was no time for us to order and await a response from either the defendant or the judge before granting the petition, the absence of such an order did not preclude our granting the petition for mandamus. Rule 2 of the appellate rules authorizes a court of appeals on its own initiative to suspend any of those rules that are not jurisdictional if necessary "to expedite its decision or for other good cause." See *Alva v. Teen Help*, 469 F.3d 946, 956 n. 17 (10th Cir. 2006); *Lazy Oil Co. v.*

*Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999). Good cause there was. But now, in deciding to deny the defendant's motion to rehear our order, we have treated the defendant's motions, the judge's request to file a response (which we had not received before we granted the petition for mandamus), along with the transcript of the district judge's pertinent remarks in court, as responses, pursuant to Fed. R. App. P. 21(b), to the petition for mandamus.

The defendant points out that 18 U.S.C. § 3731, which governs appeals by the United States in criminal cases, does not authorize an appeal from an order excluding evidence if the order was issued after the jury is sworn. *Crist v. Bretz*, 437 U.S. 28, 35 (1978); *United States v. Salahuddin*, 509 F.3d 858, 862–63 and n. 9 (7th Cir. 2007); *United States v. Centracchio*, 236 F.3d 812, 813–14 (7th Cir. 2001); *United States v. Brooks*, 145 F.3d 446, 453 n. 2 (1st Cir. 1998). But the government has not appealed from the order; it has sought mandamus, which is typically directed against nonappealable orders, as otherwise an appeal would do. "There is no need to issue a writ of *mandamus* if the normal procedures for error correction would suffice." *United States v. Vinyard*, *supra*, 539 F.3d at 591. They would not in this case; were the defendant to be acquitted because of the exclusion of the fingerprint evidence, double jeopardy would bar any further prosecution of him. The judge said that the evidence related to only one count of the indictment, but that is wrong. *United States v. Herrera*, 366 Fed. App'x 674, 676–77 (7th Cir. 2010). The evidence is key in linking the defendant to the conspiracy charged in the other counts, and is made especially important by the long delay (attributable to difficulty in locating the defendant and bringing him back to the United States for trial) between the crimes with which he is charged, which occurred between 1996 and 1999, and the trial in 2010. The fingerprint evidence, unlike the memories of witnesses, had not deteriorated with the passage of time.

The trial, as we said, began on July 6. Before then, in March, on the government's appeal from an order excluding evidence before trial we had reversed the district judge's decision to exclude evidence that two of the defendant's fingerprints had been recovered from a bag of heroin wrapped in tape and further encased in condoms and found in a drug courier's rectum. *United States v. Herrera, supra*. The heroin had been removed from the bag and placed in an evidence bag (Roberson Seizure 1) and then both it and the packaging (the tape and condoms) had been placed in another evidence bag (Roberson Seizure 2), and it was this second exhibit that was at issue. The district judge's ground for excluding it was the government's having violated a discovery deadline, and we ruled that there was no indication of bad faith by the government and that the exclusion of highly probative fingerprint evidence was a disproportionate sanction for an innocent violation that had not prejudiced the defendant.

A week into trial the district judge again ordered the evidence excluded, this time because of his concern that the government hadn't adequately demonstrated the requisite "chain of custody"—that there had been no opportunity to tamper or otherwise mishandle the evidence between when it was obtained and the trial. Yet a challenge to chain of custody ordinarily goes to the weight rather than the admissibility of the evidence. E.g., *United States v. Turner*, 591 F.3d 928, 934–35 (7th Cir. 2010); *United States v. Lee*, 502 F.3d 691, 697–98 (7th Cir. 2007). And already by the end of the first week of trial the government had offered nine witnesses—and it added a tenth before filing its second mandamus petition—to establish that the chain had been intact and thus assuage the judge's concerns.

The judge stayed the trial to enable the government to petition for mandamus. We granted a brief further stay while we considered the petition, but upon being unexpectedly advised by the judge that he hadn't yet made a final decision on

whether to exclude the evidence (though when he sustained the defendant's objection to the evidence he had given no indication that his ruling was tentative), we denied the petition without prejudice.

Trial resumed on July 19, and three days later the judge definitively excluded the fingerprint evidence on suspicion of tampering. He was disturbed by the fact that the exhibit had gained 20 grams in weight between May and September 2001. (Oddly, he attached no significance to the fact that it had gained 190 grams between September 2001 and the trial.) He thought the weight gain might have been due to federal officers pressing a piece of adhesive tape containing the defendant's fingerprints (obtained elsewhere) onto the packaging of the heroin found in the drug courier's rectum. Again he stayed the trial to enable the government to renew its quest for mandamus, and it is the government's renewed petition that we granted on July 27.

The transcript of the district judge's remarks concerning the evidentiary issue reveals a degree of anger and hostility toward the government that is in excess of any provocation that we can find in the record. He repeatedly accused the government lawyers of lying. He said, for example: "I don't believe you when you say just about anything anymore because I know that you will lie to a court any time it helps you. I know that. I saw you do it. I know you will do that. You have proven that to me beyond a reasonable doubt." He said: "I am going to bring the jury out, and I am going to tell them the government has failed, once again, to have witnesses ready to proceed. The government is delaying this case. Members of the jury, this case is being delayed by the government. It has been delayed by the government. Your time has been wasted by the government." He said: "I would like you [the government lawyers] to go back to the Court of Appeals and tell them, gee, we would like to mandamus Judge Holderman because he won't allow us to call

more witnesses or prove our chain of custody that we asked you, the Court of Appeals, last week to order him to present in the evidence in the case, to admit the document, to admit the exhibit into evidence. We now want to call more witnesses to lay the foundation, witnesses that Judge Holderman has pointed out we need. We now agree with Judge Holderman, and we were wrong last week when we tried to mandamus him. I would like you to go to the Court of Appeals and you tell them that. Will you do that?... Will you do that? Will you go to the Court of Appeals and admit that you lied to them….” He threatened to conduct hearings concerning misconduct by the prosecutors (shades of the conduct that led to the issuance of the writ of mandamus in *In re United States*, *supra*).

The government had explained to the judge that the reason for the increase in weight was that the bag with the fingerprints, after being opened so that the presence and amount of an illegal drug could be determined, and later closed up again, had been weighed together with other bags. The reported weight was the weight of the package containing the several bags, and there were more bags in it when it was weighed later. Obviously the package did not gain 210 grams (330 + 20 + 190 = 540)—almost half a pound—because a piece of the tape in which one of the bags was wrapped was replaced by a strip of tape containing the defendant's fingerprints. The judge acknowledged that his supposition of tampering was “speculative,” which is an understatement. For among other things the defendant was not extradited from Panama until long after the alleged tampering, and until he was extradited the government did not have a set of fingerprints known to be his; and in addition no one has explained how fingerprints on another piece of material could have been transferred to the adhesive side of the tape, which was where they were found.

Any such tampering would be a criminal obstruction of justice. A judge should not accuse anyone of a crime on the basis

of an implausible speculation. We note that the defendant's petition and amended petition for rehearing do not defend the judge's theory.

The defendant will be able at trial to argue that the jury should disregard the evidence, but there is no justification for excluding it on the "speculative" ground excogitated by the judge. *United States v. Prieto*, 549 F.3d 513, 524-25 (7th Cir. 2008); *United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir. 1994); *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) ("merely raising the possibility of tampering is not sufficient to render evidence inadmissible"). So clear is this, and so manifest the excess of emotion demonstrated by the judge in excluding the evidence, that we can only conclude that the exacting standard for the grant of a writ of mandamus, *Cheney v. United States District Court*, 542 U.S. 367, 380 (2004); *In re Rhone-Poulenc Rorer, Inc.*, *supra*, 51 F.3d at 1294–95 (7th Cir. 1995) ("irreparable injury is not sufficient for mandamus; there must also be an abuse of discretion that can fairly be characterized as gross, very clear, or unusually serious"); *United States v. Spilotro*, 884 F.2d 1003, 1006–07 (7th Cir. 1989), has been satisfied.

A word finally about our decision to order the case reassigned to another judge. As explained in *In re United States*, 572 F.3d 301, 308 (7th Cir. 2009) (a different case from the *In re United States* cited earlier), the recusal of a judge is required "when a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." See 28 U.S.C. § 455(a); *Reserve Mining Co. v. Lord*, 529 F.2d 181, 188–89 (8th Cir. 1976) (en banc). When the government filed its initial interlocutory appeal, the district judge without adequate grounds accused the government of appealing for the sole purpose of delaying the trial, and implied, again without basis in the record, that the government had acted in bad faith by not complying with the judge's discovery order. After the trial began, he told the jury that the government was responsible for

the numerous delays in the case and he threatened to tell the jury that it "should consider the case based upon everything that has happened in the courtroom, presented in the courtroom, including the delays that have taken place." No reasonable person would fail to perceive a significant risk that the judge's rulings in the case might be influenced by his unreasonable fury toward the prosecutors.

We are satisfied that our order of July 27, as supplemented on July 28, was sound; and we deny the petition for rehearing.