# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-2648

ERNESTO DELGADO,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A077-767-216

ARGUED FEBRUARY 15, 2012—DECIDED MARCH 22, 2012

Before POSNER, FLAUM, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* Ernesto Delgado entered the United States illegally in 1989. Eleven years later, in 2000, the Immigration and Naturalization Service (the "INS") commenced removal proceedings against Delgado by sending him a Notice to Appear. Delgado admitted the allegations in the Notice to Appear, but

sought leave to stay in the United States by filing an application for Cancellation of Removal. After several immigration hearings and two remands from the Board of Immigration Appeals (the "BIA" or "Board"), an immigration judge denied Delgado's application for cancellation, and the BIA affirmed that finding. Delgado appeals the BIA's decision, claiming that his cancellation application was wrongly decided and that his right to due process was violated. We deny Delgado's petition for review.

## I.  Background

In 1989, Delgado left his home in Morelos, Mexico and illegally entered the United States. He settled in Chicago where he has maintained a continuous residence. In 1992, he married Analoet Roman, another illegal alien, and together they have three children: Guadalupe (18 years old), Daisy (13 years old) and Luis (5 years old). All three of the Delgado's children were born in the United States and are U.S. citizens.

This case began in 2000 when the INS commenced proceedings against Delgado with the filing of a Notice to Appear. The Notice to Appear charged Delgado with being a native of Mexico who is subject to removal from the United States. In response, Delgado filed an application for cancellation of removal pursuant to INA § 240A(b)(1), 8 U.S.C. § 1229b(b)1. To qualify for cancellation under § 1229b(b)(1), an alien must meet the following four criteria:

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

The merits hearing on Delgado's cancellation of removal claim took place on September 24, 2004. Though the immigration judge ("IJ") found that Delgado established the requisite continuous physical presence and good moral character for cancellation of removal, he determined that Delgado failed to meet his burden of showing his removal would result in exceptional and extremely unusual hardship to his children, who are United States citizens. The IJ denied his application for cancellation or removal, granted voluntary departure, and alternatively, ordered his removal to Mexico.

Delgado appealed the IJ's decision to the BIA. In 2005, the BIA remanded Delgado's case to the IJ for further action and certification because the tape recording of Delgado's hearing was defective, which prevented the BIA from analyzing Delgado's claims on

appeal. The BIA instructed the IJ to take the steps necessary and appropriate to enable the BIA to review a complete record and to hold a new hearing if necessary. In response, the IJ determined that a new hearing was unnecessary, given that the only shortcoming of the previous record was an inability to discern what was said at Delgado's hearing. The IJ therefore determined that it was inappropriate to consider new documents or evidence.

The BIA disagreed. In July 2008, the BIA ruled that its 2005 order did not preclude the submission of new evidence or the taking of additional testimony, and because new evidence might have been relevant, it ordered a new hearing and preparation of a new decision that included comprehensive findings of fact. On June 18, 2010, the IJ held a second merits hearing on Delgado's application for relief.

During Delgado's 2010 cancellation hearing—the hearing we now review—Delgado offered supporting evidence in the form of documentation and live testimony. Delgado testified that his parents and at least two brothers still reside in Morelos. Despite this fact, he claimed that his family would be unable to stay with his parents in Mexico because his parents do not have the resources to support them. Delgado admits that he has not looked into the possibility of living anywhere other than Morelos, or living with anyone other than his parents. Delgado also stated that if he were to move to Mexico, his father, who owns a business in Morelos, would be unable to offer him a job. Delgado admits that

he did not look into the possibility of working anywhere besides his father's business.

In addition to Delgado's perception that there is a lack of housing and employment opportunities in Morelos, he explained that Morelos is not a safe place to live, citing excessive violence and murder. Delgado also lamented the possibility that his daughters may need to enter the Mexican education system. He stated that the schools are not as good as they are in the United States, and that the children would have difficulty taking classes in Spanish.

Guadalupe also testified at the hearing. Her sister, Daisy, did not testify, but Guadalupe offered testimony as to her sister. Guadalupe is in honors classes, receives As and Bs in school, and aspires to work in the medical field. Daisy also receives As and Bs. Both daughters have been to Mexico on vacation, and both prefer the United States to Mexico. Guadalupe can speak, read and write in Spanish. Daisy can speak Spanish enough to communicate with her father (who does not speak English), but she cannot read or write in Spanish. According to Guadalupe and Delgado, a move to Mexico would be challenging for both daughters, but would be much more difficult for Daisy. Delgado and Guadalupe maintained that Daisy would have an especially difficult time, since she is old enough to have become acculturated by the United States and she cannot read or write in Spanish. Guadalupe also expressed concern regarding her college prospects in Mexico—the nearest university to Morelos is an hour

and a half away. She also discussed the potentially prohibitive costs of a college education in Mexico, and while Delgado did not know whether Guadalupe would be eligible for financial aid, Guadalupe believed that she would not be able to receive any financial help from the State.

Delgado was unclear regarding where his children would live if he were deported. If they did remain in the United States, they would need to be supported by the income of their mother and the $50,000 that Delgado has in the bank. Guadalupe discussed the possibility of working while in school to help support the family.

If Delgado does get deported, there is a possibility that he would return to the United States in the future. One of his brothers is a United States citizen, and in 1999, Delgado's brother applied for a visa for Delgado, thus raising the chances that Delgado would not be separated from his family permanently.

At the hearing, the IJ took a semi-active role in the questioning (as he is permitted to do under 8 U.S.C. § 1229a(b)(1), which allows the IJ to "interrogate, examine, and cross-examine the alien and any witnesses."). During the direct examination of Delgado, the IJ interrupted the questioning three to four times to either clarify what was being said, ask for an expanded answer, or inquire as to why a certain line of testimony was relevant. For example, the IJ interrupted a line of questioning regarding the undesirability of Delgado's parents' home as a potential residence for Delgado's family. In interjecting, the IJ questioned the relevance of the testimony

since Delgado could choose to live in any number of other locations in Morelos, or even Mexico generally. The IJ also conducted his own examination of Delgado once both attorneys had completed their questioning. Delgado's attorney requested permission to ask follow-up questions to the IJ's examination of Delgado, but her request was denied. She also asked that both of Delgado's daughters provide testimony in support of Delgado's cancellation request, but the IJ only allowed one daughter to testify. Delgado's attorney did not object.

Delgado faults the IJ's general demeanor during Delgado's hearing. He suggests that the IJ was rude and hostile throughout the hearing. As an example of the IJ's allegedly inappropriate demeanor, Delgado quotes the following line of questioning conducted by the IJ:

> But that's why you, a good family man who's concerned about your family, would go back there and live there as opposed to any other place in Mexico, isn't it? You'd go to the place that is the most violent. You'd choose to live in that place in Mexico. Isn't that right, according to your account?

At the conclusion of Delgado's 2010 cancellation hearing, the IJ determined that Delgado met three of the four criteria to be eligible for cancellation of removal, but held that Delgado fell short of proving that his removal would result in "exceptional and extremely unusual hardship" to his children. He also ruled that Delgado should not be granted voluntary departure, since he chose not to leave the country voluntarily on the two

prior occasions that the IJ denied Delgado's cancellation request—that is, the denials from which Delgado appealed. Just as with the IJ's previous denials, Delgado appealed the 2010 ruling to the BIA. Delgado claimed that the IJ was incorrect in his assessment of the hardship that Delgado's children would face if Delgado were deported. Delgado also argued that his due process rights were violated, given the IJ's apparent bias and the IJ's rejection of certain evidence, including the testimony of one of Delgado's daughters.

On June 20, 2011, the BIA affirmed in part and vacated in part the decision of the IJ after de novo review. The BIA concluded that the IJ did not err in his assessment of the hardship that Delgado's children would face, but ruled that the IJ did err in denying Delgado's ability to leave the country voluntarily. More specifically, the BIA found that the IJ had granted Delgado voluntary departure in his two previous rulings, and that it was an abuse of discretion to deny voluntary departure now based solely on Delgado's decision to pursue his right to appeal any decision made by the IJ. Delgado has petitioned this court to review the BIA's determinations, arguing that the IJ and BIA wrongly assessed the level of hardship that Delgado's children face and that Delgado's due process rights were violated by the IJ. Delgado therefore requests that we reverse the BIA's decision and remand for further proceedings consistent with that reversal.

## II. Discussion

Delgado disputes the BIA's decision for two independent reasons. First, he argues that he has met the four criteria necessary to be considered for cancellation of removal under 8 U.S.C. § 1229b(b)(1). More specifically, he contends that his children will experience "exceptional and extremely unusual hardship" if he is deported, regardless of whether they go with him to Mexico or remain in the United States. Second, Delgado argues that the IJ did not provide him with the process that he was due under the Fifth Amendment of the Constitution of the United States. Delgado claims that the IJ clearly exhibited a bias against him during his cancellation hearing, which was evident both in the tone of the IJ's questions and in the fact that the IJ rejected probative evidence that would have advanced Delgado's position. The government contends that both of Delgado's arguments fall short. First, they maintain that we do not have jurisdiction to hear a challenge to the BIA's decision on the merits of Delgado's request for cancellation of removal, and thus it does not matter whether we believe that Delgado's children will suffer extreme hardship upon Delgado's removal from the United States. Next, the government argues that Delgado was given a full and fair hearing and a reasonable opportunity to present his claims, and thus his due process rights were not violated.

### A. Jurisdiction

We review questions concerning our jurisdiction de novo. *Lara-Ruiz v. INS*, 241 F.3d 934, 939 (7th Cir.

2001). Applications for cancellation of removal orders are permitted under 8 U.S.C. § 1229b, a provision of the INA. Another INA provision—8 U.S.C. § 1252(a)(2)(B)—clearly establishes that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b . . . of this title." *See also Mireles v. Gonzales*, 433 F.3d 965, 968 (7th Cir. 2006) ("Decisions under § 1229b are not reviewable by the federal judiciary."). We therefore lack jurisdiction to review Delgado's claim that the IJ and BIA incorrectly held that his children would experience exceptional and unusual hardship if Delgado were to move to Mexico.

The door-closing provision found in § 1252(a)(2)(B) is, however, subject to an exception found in § 1252(a)(2)(D), which states, "Nothing in subparagraph (B) or (C) . . . shall be construed as precluding review of constitutional claims or questions of law . . . ." Thus, we have jurisdiction to hear any constitutional or legal challenge Delgado brings against the BIA's decision. As noted above, Delgado has brought a due process challenge against the IJ and BIA's determinations. We turn now to those arguments.

## B. Due Process/Statutory Process Claims

### 1. Propriety of Due Process Challenge in Cancellation of Removal Proceedings

Delgado claims that the Fifth Amendment provides him with certain due process rights in relation to his application for cancellation of removal. In support, he

relies on *Reno v. Flores*, a Supreme Court case clearly stating "that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 507 U.S. 292, 306 (1993). While this point is undoubtedly true, an alien eligible for discretionary relief does not have a substantive entitlement, and therefore, there is no liberty interest at stake in a proceeding where an alien seeks discretionary relief. *Kahn v. Mukasey*, 517 F.3d 513, 518 (7th Cir. 2008). Thus, aliens, do not have a right to due process in hearings for discretionary relief, such as those conducted in response to a § 1229b application for cancellation of removal. *See id.*; *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005) ("Our cases recognize that a benefit is not a protected entitle-ment if government officials may grant or deny it in their discretion."); *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011) ("To have a liberty or property interest in some benefit, a person must have a legiti-mate claim of entitlement, which means an entitlement established by rule; hope for a favorable exercise of ad-ministrative discretion does not qualify.").

This is not the end of the matter. In situations where petitioners have made "flabby constitutional arguments" of the sort found here, we have construed such claims as arguments "that the IJ's hearing violated [the] statutory and regulatory provisions" applicable to the hearing in question. *See, e.g., Apouviepseakoda v. Gonza-les*, 475 F.3d 881, 885 (7th Cir. 2007). At first glance, this may appear to put our jurisdiction in question con-sidering our analysis above, which indicated that our jurisdiction was based on the fact that Delgado has pre-

sented a constitutional question. But "[t]he procedural sufficiency of an immigration hearing is a legal question," *Boyanivskyy v. Gonzales*, 450 F.3d 286, 291 (7th Cir. 2006), and since 8 U.S.C. § 1252(a)(2)(D) allows us to retain jurisdiction over any "constitutional claims *or* questions of law," Delgado's challenge to the sufficiency of his cancellation proceedings is safely within our purview. We review questions of law de novo. *Id.*

### 2. Sufficiency of Delgado's Cancellation Proceedings

An alien applying for cancellation of removal has the same statutory process protections as an alien involved in removal proceedings, which are laid out under 8 U.S.C. § 1229a; *cf. Portillo-Rendon*, 662 F.3d at 817 (stating that procedural entitlements found in § 1229a apply to alien that applied for cancellation of removal). Under § 1229a(b)(4), an alien subject to a cancellation proceeding "shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." *See also Apouviepseakoda*, 475 F.3d at 885. "In order to succeed in challenging the legality of such a hearing, the alien must show not only that her 'reasonable opportunity' was denied, but also that she was prejudiced." *Id.* In the end, the question we must answer is whether, considering the totality of the circumstances, the alien received a full and fair opportunity to be heard. *Id.* at 886.

Delgado offers two arguments for why his cancellation proceedings fell short of the standard set by § 1229a. First, he argues that the IJ's aggressive questioning and interruptions, along with IJ's clear hostility toward Delgado, belied any claims to neutrality and demonstrated a bias that prevented Delgado's hearing from being a fair one. Second, Delgado protests the IJ's decision to exclude certain probative evidence in direct violation of § 1229a's warning—that an alien should be able to "present evidence on [his] own behalf."

### a. Bias

An IJ's decision to question an alien in a removal or cancellation proceeding is not dispositive evidence of bias. Indeed, under § 1229a, an immigration judge is permitted to "interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). Moreover, an immigration judge has "broad discretion to control the manner of interrogation in order to ascertain the truth." *Iliev v. I.N.S.*, 127 F.3d 638, 643 (7th Cir. 1997). Limiting an IJ's discretion is the applicant's right to a full and fair opportunity to be heard. *See Apouviepseakoda*, 475 F.3d at 885.

As to the manner in which an IJ questions an applicant, we have routinely held that we would prefer IJs to exhibit appropriate decorum during removal or cancellation proceedings, but impatience, inappropriateness, and even hostility toward applicants do not generally rise to such a level as to prevent an applicant from receiving a full and fair hearing. *Apouviepseakoda*, 475 F.3d

at 885-86; *Firishchak v. Holder*, 636 F.3d 305, 311 (7th Cir. 2011). The closest cases are those "in which the questioning becomes so aggressive that it frazzles applicants and nit-picks inconsistencies until a petitioner [becomes] so distraught that the immigration judge [is] forced to pause the proceedings to give the [non-citizen] a chance to collect herself." *Apouviepseakoda*, 475 F.3d at 886 (internal quotation marks omitted) (citing *Giday v. Gonzales,* 434 F.3d 543, 549 (7th Cir. 2006)).

In *Castilho de Oliviera v. Holder*, we reasoned that an IJ's inappropriate and irrelevant questions, along with his questionable tone, did not prevent a petitioner from putting on his case, but did suggest that he may have been impermissibly biased. 564 F.3d 892, 899 (7th Cir. 2009). The IJ in *Castilho* interrupted an expert witness with inappropriate and confrontational questions, inquired into several witnesses' religious beliefs (despite the fact that the alien was not claiming religious persecution), and asked whether the alien was infertile, or, as the IJ put it, might "shoot blanks." *Id*. We held that the IJ's inappropriate tone, frequent interruptions, and apparent focus on irrelevant matters led to the impression that the IJ "entered the hearing with his mind already made up." *Id*. at 899-900.

Conversely, the IJ in *Apouviepseakoda* was deemed not to have prevented a full and fair hearing, despite the fact that he used a mocking tone, "demonstrated intemperance," and may have "asked a majority of the questions" at the applicant's hearing. 475 F.3d at 886-87. In *Apouviepseakoda* we emphasized the fact that an IJ's

interruption of testimony is not inappropriate as long as it is aimed at focusing the hearing, excluding irrelevant material, and ensure clarity in an applicant's answers. *Id.* at 877. We further highlighted that the IJ deferred to the applicant's counsel to direct the topics of discussion and gave applicant's counsel multiple opportunities to question the applicant. *Id.* at 887-88. Similarly, in *Barradas v. Holder* we determined that an IJ's interjections and questioning of the applicant were not inappropriate, given that the interjections were aimed at clarification, the interjections did not concern irrelevant or inappropriate matters, and the questioning occurred after the government had a chance to question the applicant. 582 F.3d 754, 767 (7th Cir. 2009).

Turning to the case at hand, the IJ's interruptions and questioning did not rise to the level of those seen in *Castilho*. The IJ's substantive interruptions of Delgado's testimony included a question about whether Delgado had paid a bond ordered by the court, a question attempting to clarify whether Delgado was referring to his home in Chicago or his potential future home in Mexico, and an attempt to determine the import of a line of questioning involving the living conditions at Delgado's parents' home. All of these questions are clearly relevant, unlike the questions asked by the IJ in *Castilho*. Further, any hostility, impatience, or rudeness exhibited by the IJ was significantly less than the rudeness exhibited in *Apouviepseakoda*, and yet we deemed the hearing in *Apouviepseakoda* to be full and fair. In *Apouviepseakoda*, for instance, we observed that the IJ mocked the applicant regarding a cultural difference

between the United States and her home in Africa. 475 F.3d at 886-87. The most that can be said about the IJ in this case is that he might have appeared sarcastic when questioning why Delgado would choose to live in Morelos instead of a safer part of Mexico, and that the IJ was perturbed by Delgado's lack of evidentiary support for his belief that there are no jobs in Morelos. Any of the inquiries on the part of the IJ cannot be labeled as having prevented Delgado from having a reasonable opportunity to present his case, and do not support the contention that the IJ harbored any bias toward Delgado.

### b. Inability to Present Evidence

An immigration judge has the authority to narrow the focus of a hearing and exclude irrelevant evidence, but he may not "bar complete chunks of oral testimony that would support the applicant's claim." *Barradas*, 582 F.3d at 766 (citing *Kerciku v. INS*, 314 F.3d 913, 918 (7th Cir. 2003)). When excluded testimony goes to the heart of a petitioner's claims, and may have had the potential to change the outcome of the hearing, we must find that the petitioner did not have a meaningful opportunity to be heard. *See Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 540 (7th Cir. 2005).

In *Zolotukhin v. Gonzales*, the IJ prevented several key witnesses—including petitioner's grandmother, petitioner's mother, petitioner himself, and an expert—from testifying about the persecution suffered by the petitioner's family and others similarly situated in petitioner's home country, on the grounds that past persecu-

tion is unimportant. 417 F.3d 1073, 1075-76 (9th Cir. 2005). The Ninth Circuit held that this testimony could have shown that petitioner had a well-founded fear of future persecution, and thus altered the result of his hearing, and thus found a violation of petitioner's rights. *Id.* at 1076-77. The IJ also indicated that she did not believe the petitioner's story, before his hearing even began. *Id*. at 1075.

In *Apouviepseakoda*, conversely, the IJ's denial of certain witnesses' proposed testimony was not found to be a violation of the petitioner's procedural rights. 475 F.3d at 889. In that case, the IJ declined to hear the testimony of the petitioner's daughter—which would have included information about the abuse that petitioner suffered in her home country—and the testimony of an expert on the politics of petitioner's home country. *Id*. at 888. The IJ instead accepted an offer of proof. We reasoned that "[t]he typical context in which we have found fault with an IJ's decision to deny corroborating witness testimony has arisen where an IJ has 'made up his mind about the case and was subsequently unwilling to listen to any testimony,' despite the diligent insistence of the alien's counsel that the testimony speaks directly to the questions the IJ is supposed to evaluate in making the decision." *Id*. at 888-89 (quoting *Kerciku v. INS,* 314 F.3d 913, 918 (7th Cir. 2002)). Since the petitioner's counsel made no objection to the IJ's refusal to hear the two witnesses' testimony and the petitioner received plenty of time and opportunity to argue her case generally, we held that she received a reasonable opportunity to be heard, despite her less than perfect hearing. *Id*. at 889.

Delgado challenges two decisions by the IJ to restrict the evidence he was permitted to present. First, he challenges the IJ's decision not to allow any new evidence to be admitted at Delgado's 2007 hearing. This error was cured when Delgado received a full hearing in 2010, and thus could not have prejudiced Delgado. *Apouviepseakoda*, 475 F.3d at 885. Delgado also challenges the IJ's decision to permit only one of Delgado's daughters, Guadalupe, to testify. As with the exclusions of testimony in *Apouviepseakoda*, Delgado's attorneys did not object to the IJ's decision to permit only one daughter to testify in this case. Further, unlike the decisions made by the IJ in *Zolotukhin*, the decision to exclude Daisy's testimony does not suggest that the IJ in this case already made up his mind. The exclusion of Daisy's testimony is better explained by a desire to focus the testimony provided and cut out extraneous, cumulative, or unnecessary evidence. This conclusion is bolstered by the fact that both Delgado and his daughter Guadalupe testified as to the likely effects that Delgado's deportation would have on Daisy, as well as the IJ's stated desire to avoid unnecessary stress and pressure on children that must testify in proceedings of this nature.

Even if Daisy's testimony was inappropriately excluded, Delgado has not shown that he was prejudiced by this exclusion. He has not suggested any testimony that she would have provided that was not already revealed through the testimony of Delgado and Guadalupe. The record reflects that Delgado appears to be a responsible individual with a strong sense of family and work ethic who has lived a peaceful and productive life in

the United States for over 20 years. However, considering the totality of the circumstances surrounding his cancellation hearing, it cannot be said that he failed to receive a full and fair hearing in which he had the reasonable opportunity to present his case.

### III.  Conclusion

For the foregoing reasons, we DENY Delgado's petition for review.