FILED
United States Court of Appeals
Tenth Circuit

**July 19, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ILIA TODOROV ILIEV,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 09-9517

---

**ON PETITION FOR REVIEW OF AN ORDER OF**
**THE BOARD OF IMMIGRATION APPEALS**

---

Jeff D. Joseph (Reed H. Allen with him on the briefs), Joseph Law Firm, Aurora,
CO, for Petitioner.

Lance L. Jolley (David V. Bernal, Assistant Director with him on the brief),
United States Department of Justice, Office of Immigration Litigation,
Washington, D.C., for Respondent.

---

Before **HARTZ, GORSUCH,** and **HOLMES**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

Ilia Iliev, a citizen of Bulgaria, asks us to overturn a Board of Immigration

Appeals ("BIA" or "Board") order holding him ineligible for a hardship waiver

under 8 U.S.C. § 1186a(c)(4)(B).  He claims the BIA applied the wrong legal

standard when reviewing his waiver request and failed to credit fully the evidence he presented. Our review confirms, however, that the BIA applied the correct legal standard; beyond reaching and passing on that question, however, we find that we lack statutory authority to entertain the balance of Mr. Iliev's challenge. We thus decline to overturn the Board's decision, denying in part and dismissing in part Mr. Iliev's petition for review.

I

Mr. Iliev entered the United States in 1996 on a tourist visa. After the visa expired, Mr. Iliev remained in the country illegally. Eventually, he married Cathy Nunez and, shortly after their marriage, the couple filed a petition seeking lawful permanent resident status for Mr. Iliev. In due course, the petition was granted and, in 2001, Mr. Iliev was admitted to the United States on a conditional basis. *See* 8 U.S.C. § 1186a(a)(1). Two years later, Mr. Iliev and Ms. Nunez jointly filed another petition, as required by 8 U.S.C. § 1186a(c)(1), seeking to have Mr. Iliev's conditional status lifted.

Before that petition could be processed, however, the couple divorced. Under federal law, an alien's conditional permanent resident status ceases if his qualifying marriage ends in divorce, rendering him potentially removable from the country. *See* 8 U.S.C. § 1186a(b)(1)(A)(ii). Because of this, Mr. Iliev filed a new petition seeking unconditional permanent resident status based on one of § 1186a(c)(4)'s so-called "hardship waiver" provisions. In particular, he sought

- 2 -

to take advantage of § 1186a(c)(4)(B). That provision permits the Attorney General to grant an alien full, unconditional permanent resident status even if his marriage ended in divorce so long as, among other things, the marriage "was entered into in good faith." *See* 8 U.S.C. § 1186a(c)(4)(B).

Mr. Iliev's new petition met with no success. The Citizenship and Immigration Services denied the petition, terminated Mr. Iliev's conditional permanent resident status, and served him with a notice to appear for removal proceedings before an Immigration Judge ("IJ"). During his removal proceedings before the IJ, Mr. Iliev renewed his request for a hardship waiver under § 1186a(c)(4)(B). After an evidentiary hearing, the IJ made certain credibility determinations adverse to Mr. Iliev, and then proceeded to weigh the evidence he found credible, all before ultimately finding that Mr. Iliev had not entered into his marriage to Ms. Nunez in good faith. The IJ thus denied Mr. Iliev's request for a hardship waiver and proceeded to order him removed to Bulgaria. In a brief order issued by a single Board member, the BIA affirmed the IJ's decision. *See* 8 C.F.R. § 1003.1(e)(5). In doing so, the Board explained its view that the IJ "made reasonable inferences from the record as a whole" and that the "record contains too many questions regarding [Mr. Iliev's] intent to conclude that he met his burden to show that he entered the marriage in good faith." BIA Order at 2.

II

Mr. Iliev now petitions us to review and undo the Board's order. His petition proceeds in two essential movements — one legal and one factual. First, Mr. Iliev argues that the Board applied the wrong legal standard when evaluating his eligibility for a good faith marriage waiver. Second, he submits that the Board failed to take full account of the evidence he presented supporting his waiver request.[1] In reply, the government suggests that we lack jurisdiction to review Mr. Iliev's petition and that, in any event, it is meritless.

We hold that we possess jurisdiction to review Mr. Iliev's petition to the extent it contends the BIA applied an incorrect legal rule to his case, but that this challenge fails on the merits. At the same time, we hold that we lack jurisdiction to review the balance of Mr. Iliev's petition because deciding it would require us to pass on the BIA's credibility determinations and the weight the Board gave to certain pieces of evidence — something Congress has expressly denied this court the power to do. In reaching these holdings, we first outline the law governing our analysis (Section II.A) before turning to its application in this case (Section II.B).

---

[1] Before us, Mr. Iliev does not contest the Board's holding that he is subject to removal or the denial of his request for a voluntary departure, but instead trains his fire only on the BIA's decision to deny him a hardship waiver. For this reason, we focus our own analysis on the hardship waiver question alone.

- 4 -

A

The legal rules applicable to this case are found in three separate but related statutory provisions.

First among these is 8 U.S.C. § 1252(a)(2)(B)(ii). Part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009, this provision denies federal courts authority to review certain discretionary immigration decisions by the Executive Branch, stating that "no court shall have jurisdiction to review . . . decision[s] or action[s] of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General."[2] As the Supreme Court has explained, "many provisions of IIRIRA," including surely this one, "are aimed at protecting the Executive's discretion from the courts — indeed, that can fairly be said to be the theme of the legislation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) (emphasis omitted).

Second is 8 U.S.C. § 1186a(c)(4). It is part of the "subchapter" referenced in § 1252(a)(2)(B)(ii). *See Atsilov v. Gonzales*, 468 F.3d 112, 115 (2d Cir. 2006). And it provides that the question whether to "remove the conditional basis of the permanent resident status" of a divorced alien who "demonstrates that . . . the

_____

[2] The Attorney General has delegated a considerable amount of his authority over immigration matters to the BIA, *see* 8 C.F.R. §§ 1003.1(a) & 1003.10(a), and thus the Attorney General's discretionary immigration actions are often, as here, carried out by that agency.

- 5 -

qualifying marriage was entered into in good faith by the alien spouse," is among those decisions entrusted by Congress to the "Attorney General's discretion." 8 U.S.C. § 1186a(c)(4)(B). This section also provides that "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General." *Id.* § 1186a(c)(4).

Third is 8 U.S.C. § 1252(a)(2)(D). Enacted nine years after IIRIRA, as part of the REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 302, this provision clarifies that IIRIRA does not pursue its discretion-preserving "theme" at all costs and without exception. Relevant to our analysis here, § 1252(a)(2)(D) expressly instructs us that "[n]othing in subparagraph (B) [of § 1252(a)(2)] . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." So it is that at least these two types of challenges remain within our purview.

Based on the plain language of and interaction between these three provisions, a few things can be said about our legal authority, and its limits, in cases like the one now before us. At the most particular level, § 1252(a)(2)(B)(ii) and § 1186a(c)(4) together deny us jurisdiction to review petitions seeking to attack credibility determinations or the weight given to the evidence by the Attorney General (or his designee). At the most general level, the same provisions also deny us jurisdiction to review the Attorney General's ultimate

decision whether or not to grant a hardship waiver to an eligible alien. Yet, between these two levels of generality, § 1252(a)(2)(D) clarifies that § 1252(a)(2)(B) does not deprive us of jurisdiction to review whether the Attorney General's actions, in the course of evaluating hardship waiver requests, implicate constitutional claims or legal questions.

So, for example, when the Attorney General's determination that an alien is ineligible for a hardship waiver rests on an error of law (and not on credibility determinations or the weight given to competing evidence), we may say so and grant the petition for review. But the ultimate decision on remand whether or not to grant a waiver, after the petitioner's legal eligibility for the waiver has been established by a court of law, remains a discretionary one entrusted to the Attorney General. *See, e.g.*, *Contreras-Salinas v. Holder*, 585 F.3d 710, 713 (2d Cir. 2009) ("[W]e lack jurisdiction to review the decision to deny a good faith marriage waiver where eligibility for the waiver has been established but the agency nevertheless has exercised its discretion to deny relief."). On these general principles, the courts of appeals are in harmony. *See, e.g.*, *Contreras-Salinas*, 585 F.3d at 713-14; *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 234 (5th Cir. 2009); *Nguyen v. Mukasey*, 522 F.3d 853, 854-55 (8th Cir. 2008); *Cho v. Gonzales*, 404 F.3d 96, 101-02 (1st Cir. 2005); *Roldan v. Att'y Gen. of U.S.*, 2010 WL 1980222 (3d Cir. 2010) (unpublished); *Roos v. U.S. Att'y Gen.*, 167 F. App'x 752 (11th Cir. 2006) (unpublished).

In an effort to suggest otherwise, the government cites us to *Urena-Tavarez v. Ashcroft*, 367 F.3d 154 (3d Cir. 2004), and *Assaad v. Ashcroft*, 378 F.3d 471 (5th Cir. 2004). In the government's view, these cases show that the Third and Fifth Circuits believe that courts may never review the BIA's hardship waiver decisions — even when those decisions implicate questions of law or constitutional claims. What the government overlooks, however, is that both of the cases it cites and relies on so heavily *predate* § 1252(a)(2)(D) and that statute's clarification that courts retain authority to review legal and constitutional questions. And telling us what the law looked like *before* § 1252(a)(2)(D) tells us but little about how the law looks *after* § 1252(a)(2)(D). It's sort of like offering an essay on the rules of baseball before the introduction of the Knickerbocker Rules: interesting as an historical matter, maybe, but not at all descriptive of the world we inhabit today. Not only does the government seek to rely on these outdated decisions; it also fails to address (or cite) more recent decisions from those same circuits that *postdate* § 1252(a)(2)(D) and acknowledge the authority of courts to review questions of law and constitutional claims. *See Alvarado de Rodriguez*, 585 F.3d at 234; *Roldan*, 2010 WL 1980222 at *1. Indeed, we have not been directed to a single case decided after § 1252(a)(2)(D)'s enactment remotely suggesting, as the government would have it, that legal questions and constitutional claims fall outside our purview.

Where the government mistakenly seeks to limit our jurisdiction, Mr. Iliev mistakenly seeks to expand it. Citing the Ninth Circuit's decision in *Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1143-47 (9th Cir. 2005), he argues that we may review not just petitions raising legal questions and constitutional claims but *also* ones challenging the BIA's credibility determinations. We readily admit *Oropeza-Wong* can be read to suggest as much, but it's not entirely clear whether that case even remains good law in the Ninth Circuit. *See Singh v. Holder*, 591 F.3d 1190, 1195 n.3 (9th Cir. 2010). And even if it does remain good law there, it has never been the law here. Like other of our sister circuits before us, we reject *Oropeza-Wong*'s suggestion that credibility determinations or the weight given to competing evidence are within our jurisdictional ken; Congress has specifically and clearly denied us authority to review those questions. *See, e.g.*, *Contreras-Salinas*, 585 F.3d at 714 n.4.

*Oropeza-Wong* errs by elevating legislative history above express textual direction. In *Oropeza-Wong*, the Ninth Circuit concluded that the congressional record leading to the enactment of § 1186a(c)(4) evinces no intent to strip courts of jurisdiction over credibility disputes. The problem is the *plain language* of §§ 1252(a)(2)(B)(ii) and 1186a(c)(4) operates to do just that. The first provision tells us courts have no authority to review "discretion[ary]" decisions assigned to the Attorney General, and the second tells us credibility determinations fall within the "sole discretion" of the Attorney General. It follows ineluctably from these

express directions that credibility determinations are not reviewable. And no amount of unenacted legislative history can override the plain language of statutes that have endured the rigors of bicameralism and presentment. "[W]e do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994); *see also Contreras-Salinas*, 585 F.3d at 714 n.4.

Confirming our reading of the plain text is the statute's structure. If Congress had wished to ensure judicial review of credibility determinations as *Oropeza-Wong* seems to suppose, it easily "could have done so by specifically and explicitly exempting" such decisions "from the operation of the jurisdiction-stripping provisions of IIRIRA." *Perales-Cumpean v. Gonzales*, 429 F.3d 977, 983 (10th Cir. 2005). In fact, Congress showed its awareness of just this possibility by exempting *other* discretionary decisions by the Attorney General (e.g., those involving certain asylum applications) from § 1252(a)(2)(B)(ii)'s jurisdiction-stripping provision. *See id.* The fact that Congress could've — but didn't — provide a parallel exemption for credibility determinations is telling of a choice thoughtfully made, not one blithely ignored. "In legislation generally, and in this area particularly, Congress knows how to address an issue of jurisdiction which it desires to be accorded special treatment." *Id.*; *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same

Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal alteration and quotation marks omitted)). And we are hardly free to revisit and revise the choices Congress has made.

B

With the legal principles governing our review now in hand, we can turn to the task of applying them to Mr. Iliev's case, recalling that he essentially raises two arguments before us. He claims, first, that the BIA applied the wrong legal standard to his hardship claim. Second, he argues that the BIA erred in its view of the evidence. We address each point in turn.

1

Mr. Iliev's legal argument is straightforward enough. He submits that the BIA incorrectly applied a presumption of fraud when assessing his hardship waiver petition. As he acknowledges, to become eligible for a hardship waiver under § 1186a(c)(4)(B), the burden was on him as the petitioner to show, among other things, that he entered into the marriage in good faith, and to make this showing by clear and convincing evidence. *See* Opening Br. at 33; *see also* 8 U.S.C. § 1186a(c)(4)(B); 8 C.F.R. § 1216.5(e). According to Mr. Iliev, the Board erred as a matter of law by adding to this burden and forcing him to overcome a presumption that his marriage was fraudulent from the start. That the Board did so can be discerned, Mr. Iliev says, from the administrative case law the BIA

cited and relied on; as he puts it, "[t]he only indications on record of the standard applied by the Board are its own citations to case law that imposes a rebuttable presumption of fraud on petitioner." Reply Br. at 16.

Although we have authority to entertain this argument, it fails on the merits. To be sure, Mr. Iliev's claim implicates a pure question of law. And, in § 1252(a)(2)(D), Congress granted us authority to review such questions, as we've already explained and as all of our sister circuits now agree. But, while we may hear Mr. Iliev's claim, and while we review claims of legal error like his *de novo*, there is simply no error of law lurking here for us to remedy. *See Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1010 n.2 (10th Cir. 2008) (questions of law generally are reviewed *de novo*). The Board explicitly found that "there is a paucity of evidence that would establish that the respondent entered into the marriage in good faith." BIA Order at 1-2. From this, the Board concluded that "this record contains too many questions regarding the respondent's intent to conclude that he met his burden to show that he entered the marriage in good faith. Consequently, we agree that the respondent has failed to establish his eligibility for a good faith waiver." *Id.* at 2. All of this amounts to a correct statement of the law under § 1186a(c)(4)(B) — and is just as Mr. Iliev would have it. At no point did the Board mention, let alone apply, any presumption of fraud against him.

Like the Board's decision itself, the administrative cases the Board cited and relied upon articulate the very (and correct) legal standard that Mr. Iliev urges. Mr. Iliev argues that the Board erred by relying on *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983) and *Matter of Patel*, 19 I. & N. Dec. 774 (BIA 1988), but both cases correctly explain that, in hardship waiver cases like his, "[t]he central [legal] question is whether the bride and groom intended to establish a life together at the time they were married." *Matter of Laureano*, 19 I. & N. Dec. at 2-3; *see also Matter of Patel*, 19 I. & N. Dec. at 783-84.[3] Both cases, moreover, cited and relied on the two hardship waiver precedents — *Matter of McKee*, 17 I. & N. Dec. 332 (BIA 1980) and *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975) — that Mr. Iliev himself says properly control his case. *Compare* Reply Br. at 16 ("[T]he standard the Board should have employed here is *Matter of McKee* . . . ."), *and* Opening Br. at 33 ("*Matter of McKee* reaffirmed *Bark v. INS* . . . ."), *with Matter of Laureano*, 19 I. & N. Dec. at 2-3 (citing *Matter of McKee* and *Bark*), *and Matter of Patel*, 19 I. & N. Dec. at 783-84 (same). On all fronts, then, Mr. Iliev's claim fails; the Board's decision is legally sound.[4]

---

[3] Although *Matter of Patel* did apply a presumption of fraud in its analysis under 8 U.S.C. § 1154(a)(2)(A), it did not suggest that the same presumption applies in cases arising under § 1186a(c)(4)(B). In fact, just the opposite — it expressly distinguished § 1186a(c)(4)(B) hardship waiver cases like Mr. Iliev's from § 1154(a)(2)(A) cases in which the presumption of fraud applies. *See* 19 I. & N. Dec. at 783-84.

[4] On the penultimate page of his opening brief, Mr. Iliev suggests in

(continued...)

Mr. Iliev's second argument focuses not on the legal standard the BIA applied to his case but on its assessment of the facts. In its order, the Board cited five facts supporting its conclusion that Mr. Iliev hadn't entered into his marriage in good faith. It emphasized that: (1) Mr. Iliev failed to include his wife on the title of the property they claimed to be their marital home; (2) he didn't attend his mother-in-law's funeral; (3) he didn't know the cause of his mother-in-law's long-term illness; (4) he had established relationships with other women during the marriage; and (5) "[m]ost compelling[ly]," he and his wife lived apart, often apparently in separate states, during the course of their marriage. BIA Order at 2.

Before us, Mr. Iliev challenges the BIA's reliance on these five facts, complaining that the Board failed to consider and appreciate fully his competing evidence on each point. For example, he draws our attention to his testimony that: (1) the couple made a joint decision not to include Ms. Nunez on the title to their home for economic reasons; (2) he didn't attend his mother-in-law's funeral because of his personal phobia of funerals; (3) he couldn't remember his mother-in-law's illness because four years had passed since her death and the beginning

---

[4](...continued)
passing that the BIA's decision might raise "serious constitutional concerns." Opening Br. at 41. He fails to develop this suggestion sufficiently, however, and so has waived it. *See, e.g.*, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

of his hearing; (4) his relationship with another woman was a drunken mistake; and (5) the couple really did live together, at least for some period of time. In Mr. Iliev's view, the BIA gave too short a shrift to these explanations for his actions.

Having said what Mr. Iliev's claim *is*, it is equally important to say what it is *not*. In the first place, it is not a complaint that the five facts the BIA cited to support its decision, if true, are insufficient as a matter of law to warrant the denial of a hardship waiver application. Neither is it a complaint that the government's evidence, when credited fully and viewed in the light most favorable to the government, fails to establish each of these five facts. Put differently, Mr. Iliev doesn't challenge the legal sufficiency of the government's evidence, taken on its own terms, to warrant the denial of a hardship waiver under the standard set forth in § 1186a(c)(4)(B). We thus have no occasion today to pass on the question whether we possess jurisdiction to review a petition raising such a challenge.

In the second place, Mr. Iliev's claim cannot really even be a complaint that the BIA failed to *consider* the explanations he offered for his conduct. In its order, the BIA indicated that it *did* consider Mr. Iliev's proof, expressly acknowledging that Mr. Iliev had offered "possible explanations" for each of the various facts on which it rested its decision. BIA Order at 2. The Board rejected those explanations, however, because "the Immigration Judge made reasonable

- 15 -

inferences from the record as a whole rejecting the respondent's claims." BIA Order at 2. And the IJ's "inference" about Mr. Iliev's evidence is manifest in the record before us. The IJ stated that he "heard testimony from the [petitioner] and his former wife, and also has heard from friends, [and] has seen all the affidavits," IJ Order at 2, but that, at the end of it all, and for reasons he set forth in a twelve page opinion, he couldn't "believe a thing [Mr. Iliev] told [him]." IJ Order at 11.[5] On this record, then, it is evident that the BIA and IJ *did* consider Mr. Iliev's testimony and simply rejected it as not credible. Accordingly, we have no need to pass on the question whether the BIA's failure to consider at all a petitioner's proof is something we might have jurisdiction to review.

Instead, Mr. Iliev's complaint before us can be no more than that the Board failed to catalogue and refute each particular explanation he offered for his conduct. And, to be sure, Mr. Iliev pursues this line, complaining that the Board acted in summary fashion, rejecting his proof with a sweep of the hand rather than

---

[5] Where, as here, a single member of the BIA affirms an IJ's decision in a brief opinion adopting the IJ's reasoning, "we are not precluded from consulting the IJ's more complete explanation" of the grounds on which the BIA relied. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). Of course, *Uanreroro* and its progeny make clear that our "task is to determine whether, in issuing [its] . . . order . . . , the BIA incorporated the IJ's reasoning, either expressly or by implication. *Only then* may we impute the IJ's opinion to the BIA." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007) (emphasis added). *See also Uanreroro*, 443 F.3d at 1204 ("we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance"). In this case, the BIA's order makes manifest that it was adopting the IJ's "reasonable inferences" about Mr. Iliev's credibility.

a meticulous review of his various explanations for his conduct. But the difficulty with this attack is that the BIA rested its decision on its judgment that the IJ reasonably found Mr. Iliev's evidence not credible. That ground for decision encompassed *all* of Mr. Iliev's testimony. Indeed, the IJ expressly said as much. So, though the BIA's opinion might not have detailed and discussed each of Mr. Iliev's various explanations, its opinion reflects that they were considered and uniformly rejected for lack of credibility.

At bottom, then, however he might try to parse it, Mr. Iliev's problem with the BIA's disposition can boil down to no more than a disagreement with its endorsement of the IJ's credibility determination. And this is something we may not second guess. As we have explained, §§ 1252(a)(2)(B)(ii) and 1186a(c)(4) operate to deprive this court of jurisdiction to review either the BIA's credibility determinations or its weighing of the evidence it has found to be credible. Congress has clearly said that those decisions belong to the Executive, not the Judicial, Department. And careful attendance to the bounds of our jurisdiction "is not a mere nicety of legal metaphysics," but essential to the rule of law in "a free society." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 77 (1988). After all, "[t]he courts, no less than the political branches of the government, must respect the limits of their authority." *Id.*; *see also In re C & M Properties, L.L.C.*, 563 F.3d 1156, 1161 (10th Cir. 2009). Deference to the

will of Congress, then, precludes us from entertaining this portion of Mr. Iliev's petition for review.

In this respect, our case finds a near perfect reflection in *Contreras-Salinas*. There, the petitioner, recognizing the same potential jurisdictional pitfall that confronts Mr. Iliev, assiduously sought to avoid characterizing her petition as one challenging credibility determinations or the weight assigned to competing evidence. Instead, she sought to characterize her claim as alleging a failure by the BIA and IJ to *consider* various pieces of "material evidence" she had produced tending to show that she entered into her marriage in good faith. 585 F.3d at 714. And this, she argued, was a legal claim over which the court had jurisdiction.

The Second Circuit, however, declined to pass on that question. It concluded that, "regardless of how petitioner characterize[d] her claim, she [was] essentially challenging the agency's credibility determinations and the relative weight it accorded to evidence." *Id.* at 715. The court acknowledged that the BIA and IJ had not "expressly parse[d] or refute[d] on the record each individual argument or piece of evidence offered by the petitioner." *Id.* at 714 (quoting *Wang v. Bd. of Immigration Appeals*, 437 F.3d 270, 275 (2d Cir. 2006)). But this, the Second Circuit explained, wasn't necessary because it was "apparent from the IJ's decision that he found that evidence to be not credible and outweighed" by

other evidence. *Id.* at 715. For this reason, the court held that it lacked statutory authority to entertain her claim.

Exactly the same might be said here. Though Mr. Iliev argues that the BIA and IJ failed to consider specific pieces of evidence, it is apparent from their decisions that both the BIA and IJ *did* consider his evidence and rejected it as not credible. And this credibility determination is, at the end of the day, the real nub of Mr. Iliev's complaint. Tellingly, he sometimes acknowledges as much in his own briefing, admitting that his problem isn't with *whether* his evidence was considered but with the *weight* assigned to it by the BIA and IJ. *See, e.g.*, Opening Br. at 31 ("The BIA erred . . . by . . . focusing on minimal adverse evidence, and unreasonably discounting the overwhelming evidence that Mr. Iliev presented showing a good faith relationship with Ms. Nunez."); *id.* at 35 ("The [BIA] decision is severely deficient in that the facts referenced are, when properly considered in context, not as significant as the decision so characterizes."); *id.* at 37 ("The financial evidence supporting Mr. Iliev's application far outweighs the questionable negative inference that the BIA makes in its decision."); *id.* at 41 ("The amount of documentary evidence of cohabitation is overwhelming in the face of the evidence to the contrary."). We simply are not empowered to entertain, let alone vindicate, arguments of this sort, however they may be characterized or packaged.

* * *

In the end, our resolution of this case comes in two parts. First, to the extent that Mr. Iliev's petition for review seeks to challenge the legal standard the BIA employed to analyze his hardship waiver application, it is denied on the merits. Second, the balance of Mr. Iliev's petition is dismissed because it seeks review of matters that fall beyond the jurisdiction of this court.