In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1050

ANOUAR DARIF,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A048-276-498

ARGUED SEPTEMBER 28, 2012 — DECIDED JANUARY 2, 2014

Before POSNER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Anouar Darif, a native and citizen of
Morocco, married Dianna Kirklin, a citizen of the United
States, and by virtue of the marriage was admitted into the
United States as a conditional permanent resident in 2001. But
the marriage was a sham. Darif was convicted of marriage

fraud and related charges, and the Department of Homeland Security ("DHS") initiated proceedings to remove him. An immigration judge ("IJ") found Darif removable and rejected all of his arguments for relief. The Board of Immigration Appeals ("BIA" or "Board") initially ordered further proceedings, but when the case returned to the BIA after remand, the Board likewise rejected all of Darif's claims for relief from removal.

In his petition for review, Darif presses only his argument for an extreme-hardship waiver pursuant to 8 U.S.C. § 1186a(c)(4). He claims that the IJ was biased and otherwise denied him a full and fair hearing in violation of his right to due process. But regardless of the alleged flaws in the proceedings before the IJ, the BIA independently reviewed Darif's request for a hardship waiver and exercised its discretion to deny it; we have no jurisdiction to review that discretionary determination. *See* 18 U.S.C. § 1252(a)(2)(B)(ii). Although we may review constitutional claims and questions of law, *see id.*, Darif's due-process argument cannot succeed because an alien has no protected liberty interest in discretionary immigration relief. Even if the due-process claim is recast as a challenge to the legal sufficiency of Darif's hearing under the governing statutes and regulations, Darif was not prejudiced because the BIA gave his hardship claim plenary and independent consideration and denied it in an exercise of its discretion. Accordingly, we deny the petition for review.

## I. Background

Darif and Kirklin married in December 2000 in Morocco. Later that month Kirklin submitted an I-130 Petition for Alien Relative, the petition that must be filed to enable an alien spouse to obtain lawful permanent residence status. The approval of Kirklin's petition allowed Darif to obtain the necessary visa to enter the United States, which he did in December 2001.

Because alien spouses married to United States citizens are admitted for permanent residence on a conditional basis, *see* 8 U.S.C. § 1186a(a)(1), Darif's status in the United States was as a conditional permanent resident. To remove that conditional status, Darif and Kirklin had to comply with a number of requirements prescribed by statute, including jointly filing an I-751 Petition to Remove Conditions on Residence and under-going a personal interview. *See id.* § 1186a(c)-(d); *Hammad v. Holder*, 603 F.3d 536, 538 (9th Cir. 2010). Darif and Kirklin initiated the process for removing his conditional status by filing the necessary I-751 petition in September 2003.

At some point evidence emerged that Darif had paid Kirklin $3,000 for the marriage, exposing it as a sham. In 2004 Darif was charged with marriage fraud in violation of 8 U.S.C. § 1325(c), conspiracy to commit marriage fraud in violation of 18 U.S.C. § 371, and witness tampering in violation of 18 U.S.C. § 1512(b)(1). A jury convicted Darif on all three counts the following year, and we affirmed his convictions on appeal. *See United States v. Darif*, 446 F.3d 701 (7th Cir. 2006).

An alien spouse's visa may be revoked if it was obtained through marriage fraud, *see* 8 U.S.C. § 1155; *El-Khader v.*

*Monica*, 366 F.3d 562, 568 (7th Cir. 2004), and marriage fraud is a stand-alone ground for removal, *see* 8 U.S.C. § 1227(a)(1)(G). So in December 2005 the DHS terminated Darif's conditional permanent resident status, *see id.* § 1186a(b)(1), and initiated removal proceedings the next month. The grounds for removal were threefold: (1) Darif's conditional residency status had been terminated, *see id.* § 1227(a)(1)(D)(i); (2) Darif had committed marriage fraud, *see id.* § 1227(a)(1)(G)(ii); and (3) Darif was inadmissible at the time of entry, *see id.* § 1227(a)(1)(A). Notwithstanding his convictions, Darif continued to deny that his marriage was fraudulent.

Darif and Kirklin filed a number of petitions in an effort to stave off Darif's removal. In January 2006 Kirklin filed a second I-130 Petition for Alien Relative seeking to establish that the marriage was really a good-faith marriage despite the jury's verdict. In February 2006 Darif and Kirklin jointly filed another I-751 petition based on their continued marriage; they also asserted that Darif's removal would cause extreme hardship. Finally, Darif filed his own I-751 petition relying solely on extreme hardship.

Only the request for an extreme-hardship waiver is at issue here, so we pause for a moment to sketch how this form of relief works. As we have noted, to remove the conditional status of permanent residence, an alien and his citizen spouse must jointly file a timely I-751 petition and submit to a personal interview. *See id.* § 1186a(c)(1). The petition must state, among other things, that the alien spouse and citizen spouse are married and that they did not marry for the purpose of gaining the alien spouse's admission as an immigrant. *Id.*

§ 1186a(d)(1). The extreme-hardship waiver comes into play when the alien spouse cannot comply with the petition and interview requirements. *See id.* § 1186a(c)(4)(A). In that situation "[t]he Secretary of Homeland Security, in the Secretary's discretion, may remove the conditional basis of the permanent resident status … if the alien demonstrates that … extreme hardship would result if such alien is removed." *Id.* A favorable determination of extreme hardship would have counteracted at least one basis for Darif's removal—that his conditional permanent residence status had been terminated. *See id.* § 1227(a)(1)(D)(ii).

Darif's removal hearing was held on May 4, 2006, the day after we issued our opinion affirming Darif's convictions. Darif and Kirklin appeared without an attorney. Apparently no one was aware of our decision the day before because the IJ continued the hearing to wait for the results of Darif's criminal appeal. Darif maintains, however, that the judge made a number of off-the-record comments at this hearing suggesting that he was biased. Because the record reflects none of these comments, we take Darif's version of events from his affidavit and accept it for the sake of argument. Darif states that at the beginning of the hearing, the IJ told Kirklin that she could let go of Darif's arm because he was "not going anywhere … *yet*." During the hearing itself, the judge referred to Darif's convictions and said, "[Y]ou had better hope you win that appeal because if you don't, you're done, it's over, you are out of here; there are no more continuances, no more chances." The judge later referred again to Darif's criminal case and told him that if he lost in the Seventh Circuit, he would lose in immigration court. Finally, when Darif asked the judge whether he should

notify the court when his appeal was decided, the judge responded, "[O]h yeah, you can bring it in, we can get this over with real quick, the sooner the better."

The IJ reconvened the hearing on June 1, 2006, having learned by then of our decision affirming Darif's convictions. This time Darif appeared with counsel, so the judge continued the hearing to June 30 for purposes of "pleading and any and all forms of … relief." The judge explained to Darif that on that date his counsel would tell the court "whether he wants to apply for a benefit or a defense." Whether these statements meant that Darif needed to be prepared to present his evidence on all his claims for relief on June 30 would later become the subject of dispute.

At the June 30 hearing, the IJ determined that Darif was removable on all three grounds advanced by the government, essentially relying on Darif's convictions for marriage fraud. Darif's attorney then advised the judge that Darif was pursuing the following forms of relief: a continuance to allow adjudication of the recently filed I-130 and I-751 petitions; an extreme-hardship waiver under § 1186a(c)(4); a fraud waiver under 8 U.S.C. § 1227(a)(1)(H); withholding of removal under the Immigration and Nationality Act ("INA"); and protection under the Convention Against Torture ("CAT").

The IJ first addressed Darif's request for a continuance and denied it for lack of good cause. The judge noted that Darif had not informed the immigration authorities that his convictions had been affirmed and also that Darif's convictions precluded him from establishing a good-faith marriage, which would doom the I-130 and I-751 petitions in any event. For good

measure the judge added that even if the convictions did not have preclusive effect, he would deny the continuance in an exercise of his discretion.

The judge then addressed the request for an extreme-hardship waiver, expressing doubt that Darif was statutorily eligible because his conviction for marriage fraud meant that he never should have been conditionally admitted in the first place. Darif's attorney took the position that the statute allowed for an extreme-hardship waiver despite the conviction. The judge was clearly skeptical and demanded legal authority in support of this position. Darif's attorney responded that he was simply relying on his reading of the statute. The judge rejected the argument and held that Darif was statutorily ineligible for a hardship waiver as a consequence of his conviction of marriage fraud. The judge added that he would deny the waiver as a matter of discretion.

The judge moved next to Darif's request for a fraud waiver under § 1227(a)(1)(H), quickly denying this form of relief because Darif did not have a qualifying spouse based on his fraudulent marriage and also because he was not otherwise admissible. That left only Darif's requests for withholding of removal under the INA and protection under the CAT. The judge instructed Darif to call his first witness. Darif's attorney was caught off guard and said that he was not prepared to present evidence. At this point a squabble ensued about whether at the June 1 hearing the judge had told Darif and his attorney to be prepared to introduce evidence on June 30.

The judge refused to continue the matter and insisted that Darif's attorney move forward with evidence on the remaining

forms of relief that Darif was requesting. Darif's attorney declined, noting again that he did not have notice and was unprepared to move forward on the withholding and CAT claims. The judge construed Darif's failure to present evidence as an abandonment of the claims and denied them. On September 1, 2006, the IJ issued a written order explaining his findings.

Before the written order issued, however, Darif moved for recusal, or in the alternative, rehearing. The motion was based primarily on the judge's off-the-record comments at the May hearing. But Darif also maintained that recusal was necessary based on the judge's handling of proceedings involving Ouaffa Melliani, a coconspirator in Darif's marriage-fraud conspiracy. Finally, Darif contended that the IJ had denied him a full and fair opportunity to present evidence by insisting that he move forward at the June 30 hearing when he was unprepared to do so. The judge denied the motion in his September 1 written order denying relief from removal.

Darif appealed to the BIA and won a partial remand. The BIA found no basis for the IJ's recusal and held that Darif was not eligible for a fraud waiver. But the BIA remanded for reconsideration of the claims for withholding of removal and protection under the CAT, concluding that it was reasonable for Darif's counsel to assume that the IJ would not demand evidence on these forms of relief at the June 30 hearing. In a footnote the BIA also acknowledged that the IJ appeared to have erred in imposing a good-faith marriage requirement for eligibility for extreme-hardship waivers under § 1186a(c)(4),

but suggested that the error was inconsequential because any application for such a waiver would be futile.

The IJ scheduled a new hearing in July 2008 but continued it twice to allow the Citizenship and Immigration Services ("USCIS") to adjudicate the I-751 petition that Darif had filed seeking an extreme-hardship waiver. In early December 2008, the USCIS denied the extreme-hardship waiver because Darif was statutorily ineligible based on his technically still valid (if fraudulent) marriage to Kirklin.

When Darif's hearing reconvened in March 2009, the IJ agreed with the USCIS's decision, reasoning that the statute permitted extreme-hardship waivers only when an applicant could not file a joint petition with his spouse and submit to a personal interview. The judge noted that because Darif was technically still married to Kirklin, he was capable of complying with the petition and interview requirements of § 1186a(c)(1) and therefore resort to the extreme-hardship waiver was statutorily impermissible.

Darif's attorney took issue with that reading of the statute, and the proceedings again became contentious. The judge demanded to know whether any legal authority supported Darif's counsel's interpretation and warned him that a frivolous application was sanctionable. Darif's attorney replied that he did not have any legal authority but was again relying on his understanding of the text of the statute. The judge responded by reading the sanctions regulations to Darif's attorney.

The implied threat of sanctions prompted counsel to ask the judge to relieve him as Darif's attorney. A drawn-out exchange

then ensued about whether the judge should allow Darif's attorney to withdraw. The judge ultimately refused, noting that the attorney knew Darif's case and that withdrawal would disadvantage his client. This got things back on track, and counsel proceeded to introduce evidence regarding Darif's requests for withholding of removal and CAT protection.

The IJ denied Darif's applications for withholding and protection under the CAT. In his written decision, the judge also explained his conclusion that Darif was statutorily ineligible for an extreme-hardship waiver because he was still married and therefore could file a joint I-751 petition. Finally, the judge urged the BIA to consider imposing sanctions against Darif's attorney for advancing a frivolous argument about the statutory availability of an extreme-hardship waiver.

In the meantime, Darif and Kirklin were divorced. Based on this new development and before appealing the IJ's decision to the BIA, Darif moved to reopen. He was careful not to concede the earlier point that his then-still-intact (if fraudulent) marriage made him statutorily ineligible for a hardship waiver under § 1186a(c)(4). But he argued that his recent divorce removed that impediment to relief. He also submitted an affidavit and other documents to support his substantive claim that multiple hardships would flow from his removal: (1) removal would sever family ties by effectively preventing him from seeing his adopted son; (2) he had resided in the United States for eight years; (3) he suffered from chronic back problems; (4) the Moroccan government may presume him to be a terrorist and torture him; (5) the King of Morocco may persecute him for deserting from his government job; (6) he

owned his own culinary business in the United States; (7) he had no other means of adjusting his immigration status; (8) he had assisted local authorities in a criminal prosecution; (9) he had no other negative immigration history and was law abiding while in the United States; and (10) he was gainfully employed and supported his family.

With the motion to reopen pending, Darif again appealed to the BIA. The BIA treated the motion to reopen as a motion to remand and considered it with his appeal. In a decision issued in December 2011, the BIA dismissed the appeal and denied the motion, rejecting Darif's claims for withholding of removal and protection under the CAT because he had not established a likelihood that he would be persecuted upon his removal to Morocco. The BIA also rejected Darif's request for an extreme-hardship waiver, holding that his conviction for marriage fraud outweighed his claimed hardships. Alternatively, the BIA determined that Darif's proffer was insufficient to show that any of the claimed hardships qualified as extreme. Finally, the BIA declined to make a sanctions determination, noting that if the IJ was concerned about counsel's conduct, he should have filed a complaint with the disciplinary counsel for the Executive Office for Immigration Review.

Darif petitioned this court for review.

## II. Discussion

Darif challenges only the denial of an extreme-hardship waiver under § 1186a(c)(4). The scope of our review is limited. Where, as here, the BIA issues its own opinion rather than

adopting or supplementing the IJ's opinion, we review only the BIA's opinion. *See Borovsky v. Holder*, 612 F.3d 917, 920 (7th Cir. 2010). As relevant here, the BIA did not adopt the IJ's analysis of the extreme-hardship waiver but instead exercised its own plenary review and rejected the claim based on different reasoning.

More fundamentally, Congress has strictly limited our jurisdiction to review challenges like Darif's. We generally lack jurisdiction to review decisions committed to the immigration agency's discretion. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Extreme-hardship waivers are a discretionary form of relief, *see id.* § 1186a(c)(4), so we lack jurisdiction to review the substance of the BIA's decision,[1] *see Johns v. Holder*, 678 F.3d 404, 406 (6th Cir. 2012); *Iliev v. Holder*, 613 F.3d 1019, 1023 (10th Cir. 2010). We retain jurisdiction to review constitutional claims and issues of law, *see* § 1252(a)(2)(D), and Darif has organized his petition for review around an argument that he was denied due process because the IJ was biased and interfered with his ability to fully and fairly present his case.

---

[1] The Ninth Circuit has taken the position that federal courts retain jurisdiction to review credibility determinations made by the agency when determining whether a petitioner is eligible for an extreme-hardship waiver. *See Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1147 (9th Cir. 2005). This approach, however, has come under sharp criticism for its reliance on legislative history and its irreconcilability with the clear statutory text. *See Iliev v. Holder*, 613 F.3d 1019, 1024 (10th Cir. 2010); *Contreras-Salinas v. Holder*, 585 F.3d 710, 714 n.4 (2d Cir. 2009). Darif does not challenge an adverse credibility determination or the weight that the agency gave his evidence supporting his extreme-hardship petition, so we have no occasion to decide this legal point today.

It is well established that aliens generally have due-process rights in proceedings to determine their removability. *See Reno v. Flores*, 507 U.S. 292, 306 (1993); *Podio v. INS*, 153 F.3d 506, 509 (7th Cir. 1998); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Yamataya v. Fisher* (*The Japanese Immigrant Case*), 189 U.S. 86, 101 (1903); *Batanic v. INS*, 12 F.3d 662, 666 (7th Cir. 1993). But this right does not extend to discretionary forms of relief from removal. *See, e.g.*, *Delgado v. Holder*, 674 F.3d 759, 765 (7th Cir. 2012); *Khan v. Mukasey*, 517 F.3d 513, 518 (7th Cir. 2008); *Hamdan v. Gonzales*, 425 F.3d 1051, 1061 (7th Cir. 2005). We have repeatedly held that the opportunity for discretionary relief from removal is not a protected liberty interest because aliens do not have a legitimate claim of entitlement to it. *See, e.g.*, *Boadi v. Holder*, 706 F.3d 854, 858 n.3 (7th Cir. 2013); *Duron-Ortiz v. Holder*, 698 F.3d 523, 529 (7th Cir. 2012); *Delgado*, 674 F.3d at 765; *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011); *Hamdan*, 425 F.3d at 1061. Rather, discretionary relief from removal is akin to "an 'act of grace.' " *Appiah v. U.S. INS*, 202 F.3d 704, 709 (4th Cir. 2000) (quoting *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996)).

Darif's due-process argument focuses exclusively on the denial of his request for an extreme-hardship waiver, a discretionary form of immigration relief. *See* § 1186a(c)(4)(A). So even if Darif was statutorily eligible for a hardship waiver, the decision whether to grant one remained entirely discretionary. And indeed, the BIA denied a waiver in its discretion. Because Darif has no legitimate claim of entitlement to an extreme-hardship waiver under § 1186a(c)(4), his due-process argument necessarily fails.

In his reply brief, Darif recasts the due-process claim as an argument about the legal sufficiency of his hearing before the IJ under the applicable statutes and regulations. We have sometimes permitted this kind of recharacterization. *See, e.g.,* *Delgado*, 674 F.3d at 766; *Khan*, 517 F.3d at 518. Although a denial of discretionary relief may not be challenged on procedural due-process grounds, removal proceedings are subject to certain statutory and regulatory procedural requirements. *See* 8 U.S.C. § 1229a; 8 C.F.R. § 1240.1(c); *Delgado*, 674 F.3d at 765–66. These include "notice and an opportunity for a fair hearing." *Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010). More specifically, aliens in removal proceedings are statutorily entitled to a "reasonable opportunity to examine the evidence[,] … to present evidence[,] … and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B). Regulations governing the immigration judge's authority require the judge to "receive and consider material and relevant evidence." 8 C.F.R. § 1240.1(c).

Accordingly, "[w]e have repeatedly reminded aliens claiming constitutional violations that immigration proceedings that meet statutory and regulatory standards comport with due process, and, as such, aliens are better-served by arguing instead that immigration proceedings infringed the statutory and regulatory right to a reasonable opportunity to present evidence." *Khan*, 517 F.3d at 518. Whether the IJ failed to follow these statutory or regulatory procedures in denying a petition for discretionary relief is a question of law that we review de novo. *See Delgado*, 674 F.3d at 766.

But recasting his due-process argument as a claim about the IJ's failure to follow the statutory and regulatory requirements doesn't get Darif very far, for two independent reasons. First, arguments raised for the first time in a reply brief are waived. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 889 n.9 (7th Cir. 2012); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010); *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002). Darif didn't pivot to an argument under the statutes and regulations until his reply brief. The argument is therefore waived.

Second, even if we were to conclude that the IJ's handling of the hardship-waiver question during the removal proceedings fell short of the requirements in the governing statutes and regulations, Darif must establish prejudice before we would vacate the agency's decision. *See Khan*, 517 F.3d at 518; *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 885 (7th Cir. 2007). And there was no prejudice here. Whatever shortcomings there may have been in the proceedings before the IJ (and we do not conclude that there *were* shortcomings), the BIA itself fully and independently considered the evidence Darif submitted in support of his petition for an extreme-hardship waiver under § 1186a(c)(4). Based on this independent and plenary review, the BIA concluded that Darif did not deserve this form of relief as a matter of discretion. That is, the BIA assumed without deciding that Darif was statutorily eligible for a hardship waiver and concluded—without relying on the IJ's decision—that a waiver should be denied in an exercise of discretion. This approach is entirely appropriate and effectively forecloses our further review. *See Alsagladi v. Gonzales*, 450 F.3d 700, 701 (7th Cir. 2006) ("[W]hen an agency is entitled to deny

relief as an exercise of discretion, it is always unnecessary and often inappropriate for a court to discuss the eligibility issue.").

Notably, Darif does not argue that the IJ's mishandling of his case deprived the BIA of evidence it needed to evaluate the hardship question. In short, the BIA provided Darif what he claims the IJ did not: an unbiased, complete consideration of his claim for an extreme-hardship waiver under § 1186a(c)(4). Accordingly, even if the IJ failed to comply with his statutory and regulatory duties, Darif suffered no prejudice.

The petition for review is DENIED.