NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 6, 2015
Decided February 23, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-3565

| | |
|---|---|
| YURY PARYEV, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A089-856-987 |
| LORETTA E. LYNCH, Attorney General of the United States, *Respondent*. | |

**O R D E R**

In August 2009, the Department of Homeland Security commenced removal proceedings against Yury Paryev, a Russian citizen, following the expiration of Paryev's visa. Paryev applied for adjustment of status based on his marriage to a U.S. citizen. However, an immigration judge ("IJ") determined that Paryev's criminal history outweighed the positive equities of his marriage and steady job and denied his request. The Board of Immigration Appeals ("Board") upheld the IJ's denial and declined to remand the case. Paryev moved to reopen the removal proceedings, again based on the birth of his sons, but the Board denied this motion on the ground that he failed to produce any new evidence. Paryev now petitions for review of the Board's denial of his

motion to reopen. Because he does not present any meritorious constitutional or legal contentions, we deny the petition. To the extent that Paryev challenges the Board's exercise of discretion in declining to remand, we dismiss the petition for lack of jurisdiction.

## I. BACKGROUND

In January 2006, Paryev traveled to the United States on a visitor's visa and overstayed without authorization. After settling in Wisconsin, Paryev committed a number of drinking and traffic offenses that resulted in the commencement of removal proceedings.

Paryev was first convicted of driving while intoxicated in August 2007 and had his license revoked for seven months. Paryev's license was later suspended indefinitely after he failed to attend a required interview to assess his alcohol use and provide proof of legal presence in the United States. In June 2008, Paryev was arrested for criminal trespass and criminal damage to property after his neighbor found him in her apartment; he appeared to be drunk and to have ripped the screen covering her bedroom window. Although he was ordered to stay away from the woman while out on bail, a month later the woman reported that he had followed her into a bar and would not leave. He pleaded no contest to the trespass and bail-jumping charges and was ordered to pay a fine. In October 2008, Paryev was involved in a traffic accident in which he rear-ended another car at a stoplight. He was cited for driving with a revoked license and for driving too fast for road conditions. A week and a half later, in November 2008, Paryev was again cited for speeding and for driving with a revoked license. As a consequence, his license was suspended for one year. In March 2009, Paryev was arrested a second time for driving while intoxicated, and his license was revoked for another sixteen months.

In August 2009, Paryev received a Notice to Appear charging him with removability from the United States. The following month, however, Paryev was again cited for driving with a revoked license. After he failed to comply with a driver-safety plan and provide proof of citizenship, his license was suspended indefinitely.

Paryev married his wife, a U.S. citizen, in November 2009 and appeared before the IJ a week later. During the hearing, Paryev conceded removability and said he would be requesting adjustment of status based on his marriage. But Paryev continued to commit driving and drinking offenses. A month after appearing before the IJ, he was cited for the fourth time for driving with a revoked license. A year later, in January 2011,

he was involved in a roll-over accident and was cited for driving while intoxicated for a third time and for driving with a revoked license for the fifth time.

In September 2011, Paryev applied for adjustment of status based on his marriage, and a merits hearing was held in February 2012. At the hearing, Paryev tried to minimize the significance of his convictions, testifying that the criminal-trespass charge was merely a disagreement with an ex-girlfriend, and that for his second driving-while-intoxicated offense, he was not driving but instead walking when the police officer arrested him. Paryev's wife also testified at the hearing. She stated that Paryev no longer had a drinking problem, and that he was receiving rides from family members instead of driving himself. She also stated that she did not want to follow him to Russia because she planned to finish nursing school in the United States.

The IJ denied Paryev's request for adjustment of status. The IJ reached this decision after weighing the "favorable factors against those undesirable acts or characteristics which the respondent may possess." On the one hand, the IJ explained, Paryev's marriage and his wife's desire that he remain in the United States were a favorable factor. But Paryev's many driving and drinking convictions were "significant adverse factors," as they demonstrated that "he had no regard for the driving laws" and "does not know how to modify his behavior" to a socially acceptable level. Despite Paryev's wife's testimony that he had stopped drinking, the IJ expressed no confidence that Paryev would modify his behavior in the future because he had not "attended significant counseling." The IJ also determined that Paryev's "presence in the United States poses a threat to the security and safety of all individuals in Wisconsin," and that Paryev had "shown a total disregard and contempt for any court orders."

After the IJ's decision, Paryev's wife gave birth to twin sons. Paryev appealed the IJ's decision, arguing that the IJ applied the wrong legal standard to determine that a "DUI is a crime involving moral turpitude." With his appeal, Paryev submitted new information about his sons' birth, his wife's post-partum depression, and her reliance on him for care and support. Paryev also submitted evidence that he completed a traffic-safety course, an assessment from a family therapist, and letters from family and friends attesting to his importance to his family and his involvement in his sons' care.

The Board treated this appeal as a motion to remand, which it denied in April 2014. The Board acknowledged the positive equities in the record—including Paryev's "financial and emotional support for his wife and two young sons," as well as evidence that he stopped drinking alcohol and completed a state-sponsored traffic safety program

to regain his driving privileges—but found them outweighed by his lengthy criminal history.

A month later, Paryev, through new counsel, moved the Board to reopen his removal proceedings for a "new balancing of equities" based on the birth of his twin sons and the escalating conflict between Russia and Ukraine. Paryev again submitted his sons' birth certificates, letters attesting to the support he provided to his wife and sons, and news and travel articles about the rising violence in the area encompassing Paryev's hometown.

The Board denied Paryev's motion to reopen on the ground that he had not presented new evidence material to his application to adjust status. The Board explained that it had "fully considered" Paryev's positive equities, including his becoming a father, but again found them outweighed by negative equities. The Board also concluded that the information about hostilities between Russia and Ukraine was irrelevant because Paryev was not seeking reopening to pursue an asylum claim. The Board further noted that even if he had sought reopening for this reason, the Board would deny the motion because these generalized conditions affected large segments of the population and did not prove that persecution was faced by any one individual. Lastly, the Board rejected Paryev's claim that he was deprived of due process, observing that he received a full and fair hearing in support of his application and made no showing that he was in any way prevented from fully presenting his case.

## II. ANALYSIS

Adjustment of status is a form of discretionary relief. 8 U.S.C. § 1255(a). We lack jurisdiction to review an exercise of discretion unless the petition for review presents legal questions or constitutional claims. 8 U.S.C. § 1252(a)(2)(D); *Joseph v. Lynch*, 793 F.3d 739, 741–42 (7th Cir. 2015); *Adame v. Holder*, 762 F.3d 667, 670 (7th Cir. 2014); *Jawad v. Holder*, 686 F.3d 400, 403–04 (7th Cir. 2012).

In his petition for review, Paryev attempts to avoid this jurisdictional hurdle by framing the Board's actions as legal errors. He contends that the Board engaged in impermissible fact-finding by determining that the birth of his twins would not have led the IJ to change his decision. This contention, however, addresses the Board's *prior* denial of his motion to remand in April 2014. We have no jurisdiction over that decision because Paryev did not timely appeal it. *See El-Gazawy v. Holder*, 690 F.3d 852, 857 (7th Cir. 2012); *Muratoski v. Holder*, 622 F.3d 824, 829–30 (7th Cir. 2010).

Paryev timely appealed only the Board's October 2014 denial of his motion to reopen. To the extent that Paryev argues the Board committed a legal error in that decision, this argument fails. The Board properly evaluated and denied the motion to reopen by determining that Paryev presented no new evidence; the significance of the birth of Paryev's twins had already been considered in the Board's April 2014 decision. *See* 8 C.F.R. § 1003.2(c)(1); *Salim v. Holder*, 728 F.3d 718, 720 (7th Cir. 2013); *Kucana v. Holder*, 603 F.3d 394, 396–97 (7th Cir. 2010).

Paryev also tries to manufacture a constitutional claim by suggesting that his due process rights were violated because he was denied a full and fair hearing to present evidence about the hardships his sons would face upon moving with him to Russia. But establishing a due process violation requires Paryev to show that he had a protected liberty or property interest. This he has not done; "hope for a favorable exercise of administrative discretion does not qualify." *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011); *see also Darif v. Holder*, 739 F.3d 329, 335–36 (7th Cir. 2014); *Delgado v. Holder*, 674 F.3d 759, 765–66 (7th Cir. 2012). Even if Paryev's argument were recast as a challenge to the legal sufficiency of his hearing, s*ee Darif*, 739 F.3d at 336–37, he still has not pointed to any ways in which the IJ or the Board failed to adhere to the applicable statutes and regulations. Paryev was permitted to testify and present evidence at his hearing before the IJ, and in his motion to reopen he able to present the evidence that he believed warranted reopening.

Finally, Paryev argues that the removal proceedings should be reopened to reweigh evidence because he has undergone two brain surgeries to remove a tumor since the Board's last decision. But as the government points out, Paryev never presented this evidence on appeal to the Board; therefore, we need not reach this non-exhausted claim. *See* 8 U.S.C. § 1252(d)(1); *Joseph*, 793 F.3d at 742.

## III. CONCLUSION

The petition is DISMISSED to the extent we lack jurisdiction and DENIED as to the remainder.